**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
          ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL  33133
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL LEPKOWSKI, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CAMELBAK PRODUCTS, LLC and CAMELBAK INTERNATIONAL, LLC,<br><br>Defendants. | Case No. 4:19-CV-04598-YGR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Rachel Lepkowski ("Plaintiff"), individually and on behalf of herself and all others similarly situated, by and through her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action suit brought against Defendants CamelBak Products, LLC ("CamelBak Products") and CamelBak International, LLC ("CamelBak International") (collectively, "CamelBak") for manufacturing, distributing, and selling defective CamelBak eddy Water Bottles, including the CamelBak eddy Water Bottle 32 oz, CamelBak eddy Water Bottle 25 oz, CamelBak eddy Water Bottle 20 oz, Camelbak eddy Kids Water Bottle 12 oz, CamelBak Kids Vacuum Insulated Stainless Water Bottle 12 oz, CamelBak eddy Kids Insulated Water Bottle 12 oz, CamelBak eddy Insulated Water Bottle 20 oz, CamelBak eddy Vacuum Insulated Stainless Water Bottle 20 oz, and CamelBak eddy Glass Water Bottle 24 oz (collectively, the "CamelBak eddy").

2.     CamelBak warranted that the CamelBak eddy is "spill-proof."  Among other representations, CamelBak claims that consumers who purchase the CamelBak eddy will "[e]njoy spill-proof sipping at work or on the trail."  However, the design of the CamelBak eddy – which "use[s] patented bite valves" to "prevent leaks and allow easy sipping" – is fundamentally defective.  The bottles are not "spill-proof" because water may run, flow, or fall out of the bottles (*i.e.* leak).

3.     Plaintiff brings this action on behalf of herself and a class of all similarly situated purchasers of the CamelBak eddy in the United States for:  (i) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (ii) breach of express warranty; (iii) breach of the implied warranty of merchantability; (iv) unjust enrichment; (v) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (vi) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (vii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*;

1    (viii) negligent misrepresentation; and (ix) fraud.

2                              **PARTIES**

3          4.      Plaintiff Rachel Lepkowski is a natural person and citizen of the State of California

4    who resides in Oakland, California.  On November 14, 2016, Plaintiff Lepkowski purchased a

5    CamelBak eddy Water Bottle 25 oz for approximately $15 from Sports Basement in Berkeley,

6    California.  Plaintiff Lepkowski visited Sports Basement on several occasions to look at its water

7    bottle selection before purchasing the CamelBak eddy.  Prior to her purchase, Plaintiff Lepkowski

8    reviewed the labeling, packaging, and marketing materials for the CamelBak eddy and saw the

9    representation that it is purportedly "spill-proof."  Plaintiff Lepkowski understood these claims to

10   be representations and warranties by Defendants that the CamelBak eddy is purportedly "spill-

11   proof" and free of defects that would cause water to run, flow, or fall out of the bottle (*i.e.*, leak).

12   Plaintiff Lepkowski reasonably relied on Defendants' representation that the CamelBak eddy is

13   "spill-proof" when she purchased the CamelBak eddy.  However, Plaintiff Lepkowski's water

14   bottle is defective because it leaks and has actually leaked during prior use.  Plaintiff Lepkowski's

15   water bottle leaks when placed sideways.  It also leaks when left standing up – to the extent that it

16   has filled cup holders with water.  Plaintiff Lepkowski relied on these representations and

17   warranties in deciding to purchase her CamelBak eddy, and these representations were part of the

18   basis of the bargain, in that she would not have purchased her CamelBak eddy if she had known

19   that it was not, in fact, "spill-proof."  Plaintiff Lepkowski also understood that in making the sale,

20   the retailer was acting with the knowledge and approval of CamelBak and/or as the agent of

21   CamelBak.  Plaintiff Lepkowski also understood that her purchase involved a direct transaction

22   between herself and CamelBak, because her CamelBak eddy came with packaging and other

23   materials prepared by CamelBak, including representations and warranties that her CamelBak eddy

24   is purportedly "spill-proof."

25         5.      Defendant CamelBak Products, LLC is a Delaware limited liability company with its

26   principal place of business at 2000 South McDowell Suite 200, Petaluma, California.  CamelBak

27

28

1    Products does business throughout California and the entire United States.  CamelBak Products is a

2    market leader in hydration products, such as hydration packs and water bottles.

3            6.      Defendant CamelBak International, LLC is a California limited liability company

4    with its principal place of business at 2000 South McDowell Suite 200, Petaluma, California.

5    Camel International is 100% owned by CamelBak Products, LLC.  CamelBak International does

6    business throughout California and the entire United States.  CamelBak International is a market

7    leader in hydration products, such as hydration packs and water bottles.

8                                    **JURISDICTION AND VENUE**

9            7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

10   § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of

11   the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and a least one

12   member of the proposed class is a citizen of a state different from Defendants.

13           8.      This Court has personal jurisdiction over Defendants because they have continuous

14   and systematic contacts with the State of California as to essentially render them "at home" in this

15   State, and Defendants' principal places of business are located in this State.  Moreover, Defendants

16   have purposefully availed themselves of the laws and benefits of doing business in this State, and

17   Plaintiff's claims arise out of the Defendants' forum-related activities.  Furthermore, a substantial

18   portion of the events giving rise to Plaintiff's claims occurred in this State, including Plaintiff's

19   purchase of the CamelBak eddy.

20           9.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because

21   a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this

22   District.  Plaintiff resides in this District and purchased the CamelBak eddy in this District.

23   Moreover, Defendants' principal place of business is located in this District.

24

25

26

27

28

## COMMON FACTUAL ALLEGATIONS

### A.  CamelBak Repeatedly Misrepresents That The CamelBak Eddy Is "Spill-Proof"

10.   The representation that the CamelBak eddy is "spill-proof" is core to Defendants' marketing for the CamelBak eddy, and it appears throughout the product's labeling and packaging.

11.   For example, Defendants' marketing materials for the CamelBak eddy contains a video from March 2, 2016, which states that "all CamelBak eddy bottles come with our spill-proof bite valve."  It goes on to state that "all bottles are spill-proof."



12.   Additionally, the CamelBak eddy is packaged for distribution with a cardboard hangtag. The cardboard hangtag states that the CamelBak eddy is "spill proof:"



13.     The claim that CamelBak eddy has a "spill-proof bite valve" appears on all CamelBak eddy packaging:



14.     CamelBak's website claims that consumers of the CamelBak eddy will "[e]njoy spill-proof sipping."

## DESCRIPTION

Enjoy spill-proof sipping at work or on the trail with the 0.75-liter CamelBak eddy® water bottle. 100% free of BPA, BPS and BPF.

15.     Similarly, Defendants' website features the following "specification" for the CamelBak eddy:

**CLOSURE:**                                    Spill-Proof

16.     Commercial retailers also consistently and prominently represent that the CamelBak eddy is "spill-proof" on their retail websites.  For example, Target's website includes "spill-proof" as a feature of the product:

**Highlights**
- 100% free of BPA, BPS and BPF
- Holds 25oz/.75L
- Spill-proof
- Dishwasher Safe: All parts are top-rack dishwasher safe

Amazon features a similar representation "from the manufacturer:"



**Design!**



**Spill-Proof
Water Bottle**



**Integrated
Carry Loop**

Bed Bath & Beyond's retail website also contains this representation:

## Details

Keep your child happy without worrying about spills when he or she sips from the CamelBak Kid's eddy Goal! Water Bottle. Adorned with a fun airplane graphic, this water bottle features a one-piece drink valve that is a step up from a sippy cup.

- CamelBak Kid's eddy Water Bottle is a great step up from your little one's sippy cup
- Spill-proof

17.     Each of these representations are false and misleading. As discussed below, the CamelBak eddy is not "spill-proof" because it leaks.

**B.**     **Defendants Are Aware That The CamelBak Eddy Is Not "Spill-Proof"**

18.     The Internet is replete with consumer complaints about the CamelBak eddy leaking.

For example, five years ago, one victim wrote on CamelBak's website:

> I purchased mine in October or November of 2013 and the spout and lid
> have both been acting up for the past few months.  If I fill the bottle up
> to high, it leaks.  If it's empty and I flip it upside down, it leaks.  Even if
> I re-position the straw and make sure everything is tightly in place, IT
> LEAKS!  If I haven't drank from the bottle in say 10-15 minutes and
> press the chew valve, water comes flowing out like crazy.

Four years ago, on CamelBak's website, another victim wrote:

> [T]he straw leaks a lot and renders it useless!  Buy a different
> camelback!

Six years ago, on May 29, 2013, CamelBak responded to a complaint by a third victim, who wrote:

> I have a Camelbak Eddy, it is leaking so much, my kids can't take it to
> school.  What is your return policy.

On November 20, 2013, CamelBak responded to a fourth victim, who wrote:

> [M]y girls have many camelbak eddys and they all leak, how do I go
> about fixing this?  Thanks!

Similarly, on March 24, 2015, CamelBak responded to a complaint made by a fifth victim, who

wrote:

> [H]ey Camelbak!  just wondering why your Eddy water bottles leak?
> I've had three... two of which started leaking out the top in a few
> months, and the latest one within a few days.  I'm not really into picking
> up a water bottle and discovering it's left a puddle.. and then having it
> leak all over me. stop ripping off your customers please!

On April 1, 2016, a sixth victim wrote:

> I have 3 camelbak water bottles that continue to leak!  I was under the
> understanding that these bottles were indestructible and the best,
> however with a constantly leaky bottle, I am having hard time buying
> this concept!

19.     The above reviews are just a sampling of negative feedback consumers have left

Defendants about their leaking CamelBak eddy water bottles.

20.     Like most companies who offer customers an opportunity to post reviews on their

websites and social media platforms, Defendants regularly monitor online customer reviews

because they provide valuable data regarding quality control issues, customer satisfaction, and marketing analytics.  Like most manufacturers, Defendants pay particular attention to poor and negative reviews.  As such, Defendants were aware of the above-referenced consumer complaints shortly after each complaint was posted.

21.     Defendants pay close attention when customers make similar complaints about a product, as repeated complaints may indicate a systematic problem.  Defendants also know that it is often the case that for every person who complains about a defect, there are additional consumers who experience the same defect but who did not complain.  Here, the reports and complaints put Defendants on notice of the defect in the water bottles.

22.     The failure to disclose this defect is a material omission to which Defendants had exclusive knowledge of and was not known to Plaintiff or class members.

23.     Defendants made partial representations to Plaintiff and class members while suppressing the defect in the CamelBak eddy water bottles.  Specifically, by displaying the CamelBak eddy water bottles and describing its features and use, the product packaging implied that the CamelBak eddy would not leak, without disclosing that the water bottles were not "spill-proof."

24.     As addressed above, Defendants are aware of these complaints, and know that the CamelBak eddy is prone to leaking.  For example, in a document created on August 28, 2012, Defendants have acknowledged that the CamelBak eddy leaks when exposed to a change in altitude:

> **Can I use the CamelBak® eddy™ in high-altitude/ low-pressure environments (i.e. airplanes, mountain altitudes, etc)?**
> Yes, but with special care because pressure can force liquid out through the straw.  Keep the bottle right side up with the bite valve in the closed position.  Remove the straw for additional protection. Expect a bit of "spurt" during the first sip.|You may also twist the cap open to release any pressure and then close before your first sip.

Similar language still appears on Defendants' website as of October 17, 2019.

25.     On October 4, 2013, Defendants posted a link to their Facebook page, telling CamelBak users to "take care" while flying with their water bottles and "at cruising altitude, [to] release pressure by loosening cap or sipping frequently to avoid the <u>fountain effect</u>!"

26.     Furthermore, Defendants' online Frequently Asked Questions ("FAQ") even contains a section on the CamelBak eddy leaking:

QUESTION

# HOW CAN I FIX MY LEAKY WATER BOTTLE?

ANSWER

If your eddy bottle is leaking, you might have an object trapped in the vent valve. Turn the cap over, and look under the round, grey, rubber flap. If you carefully peel back the rubber seal and clean out the inner workings of the vent valve, the leak should stop. Important: Don't remove the rubber gasket for cleaning purposes, because it's impossible to reattach.

Variations of this FAQ have been available since at least 2013.

27.     Despite Defendants' knowledge of the leaking defect, they have not recalled the bottles or otherwise sought to remedy the fact that the bottles are not "spill-proof."  Instead, Defendants continue to prominently market the CamelBak eddy with the claim that the product is "spill-proof."

## CLASS ACTION ALLEGATIONS

28.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased a CamelBak eddy (the "Class").  Excluded from the Class are persons who made such purchases for the purpose of resale.

29.     Plaintiff also seeks to represent a subclass of all Class Members who purchased a CamelBak eddy in the State of California (the "California Subclass").

30.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the millions.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

31.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to, whether Defendants' labeling, marketing, and advertising is false and misleading; whether Defendants have violated the Magnusson-Moss Warranty Act 15 U.S.C. 2301, *et seq.*; whether Defendants have violated California's Consumers Legal Remedies Act, Civil Code §§ 1750, *et seq.*; whether Defendants have violated California's Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.*, and have committed other tortious acts as described herein.

32.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff purchased a CamelBak eddy in reliance on the representations and warranties described above and suffered a loss as a result of that purchase.

33.     Plaintiff is an adequate representative of the Class and Subclass because her interests do not conflict with the interests of the Class and Subclass members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and her counsel.

34.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues

35.     Plaintiff brings all claims in this action individually and on behalf of members of the Class and Subclass against Defendants.

<u>**COUNT I**</u>
**(Violation Of The Magnusson-Moss Warranty Act,**
**15 U.S.C. §§ 2301, *et seq.*)**

36.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

37.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

38.     The CamelBak eddy is a consumer product as defined in 15 U.S.C. § 2301(1).

39.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

40.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

41.     In connection with the sale of the CamelBak eddy, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the CamelBak eddy was "spill-proof."

42.     In fact, the CamelBak eddy is defective because it leaks.

43.      By reason of Defendants' breach of warranties, Defendants violated the statutory rights due Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiff and Class members.

44.     Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for the CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

<u>**COUNT II**</u>
**(Breach Of Express Warranty)**

45.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

46.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

47.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the CamelBak eddy is "spill-proof."

48.     In fact, CamelBak eddy is not fit for such purpose because each of these express warranties are false and misleading.

49.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class members have been injured and harmed because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for the CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

## COUNT III
### (Breach Of Implied Warranty Of Merchantability)

50.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

51.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

52.     Defendants, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the CamelBak eddy is "spill-proof."

53.     Defendants breached the warranty implied in the contract for the sale of the CamelBak eddy because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, the goods were not fit for the ordinary purposes for which such goods are used, and the goods do not conform to the promises or affirmations of fact made on the label.  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

54.     Plaintiff and Class members purchased the CamelBak eddy in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

55.     The CamelBak eddy was not altered by Plaintiff or Class members.

56.     The CamelBak eddy was defective when it left the exclusive control of Defendants.

57.     Defendants knew that the CamelBak eddy would be purchased and used without additional testing by Plaintiff and Class members.

58.     The CamelBak eddy was defectively designed and unfit for its intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

59.     As a direct and proximate cause of Defendants' breach of express warranty, Plaintiff and Class members have been injured and harmed because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for the CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

## COUNT IV
### (Unjust Enrichment)

60.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

61.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

62.     Plaintiff and Class members conferred benefits on Defendants by purchasing the CamelBak eddy.

63.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiff and Class member's purchases of the CamelBak eddy.  Retention of those moneys under these circumstances is unjust and inequitable because Defendants misrepresented that the CamelBak eddy is "spill-proof."  This misrepresentation caused injuries to Plaintiff and Class members, because they would not have purchased the CamelBak eddy if the true facts were known.

64.     Because Defendants' retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

**COUNT V**
**(Violation Of California's Consumers Legal Remedies Act,**
**California Civil Code §§ 1750, et seq.)**

65.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

66.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

67.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

68.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

69.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), disallows "[a]dvertising goods or services with intent not to sell them as advertised."

70.     Defendants violated this provision by misrepresenting that the CamelBak eddy is "spill-proof."

71.     Plaintiff and the California Subclass suffered injuries caused by Defendants because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product (b) they paid a price premium for the CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

72.     On or about April 18, 2019, prior to filing this action, CLRA notice letters were served on Defendants which complies in all respects with California Civil Code § 1782(a). Plaintiff Lepkowski sent CamelBak Products and CamelBak International letters via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding

the monies received therefrom.  A true and correct copy of Plaintiff Lepkowski's letter is attached

hereto as Exhibit A.

73.     Wherefore, Plaintiff seeks compensatory damages, punitive damages, attorneys'

fees, and restitution of any ill-gotten gains due to Defendants' acts and practices, as well as

injunctive relief for this violation of the CLRA.

### COUNT VI
**(Violation Of California's Unfair Competition Law,
California Business & Professions Code §§ 17200, *et seq.*)**

74.     Plaintiff hereby incorporates by reference the allegations contained in all preceding

paragraphs of this complaint.

75.     Plaintiff brings this claim individually and on behalf of the members of the

proposed California Subclass against Defendants.

76.     Defendants are subject to California's Unfair Competition Law, Cal. Bus. & Prof.

Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and

include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or

misleading advertising …."

77.     Defendants' misrepresentations and other conduct, described herein, violated the

"unlawful" prong of the UCL by violating the CLRA as described herein; the FAL as described

herein; and Cal. Com. Code § 2607.

78.     Defendants' misrepresentations and other conduct, described herein, violated the

"unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends

public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the

conduct outweighs any alleged benefits.

79.     Defendants violated the "fraudulent" prong of the UCL by making

misrepresentations about the CamelBak eddy, as described herein.

80.     Defendants' violation has continuing and adverse effects because Defendants'

unlawful conduct is continuing, with no indication that Defendants intend to cease this fraudulent

course of conduct.  The public – and class members – are subject to ongoing harm because the deceptive and misleading "spill-proof" claims are still in use by Defendants today.

81.     Plaintiff and the California Subclass lost money or property as a result of Defendants' UCL violations because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for the CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

**COUNT VII**
**(Violation Of California's False Advertising Law,**
**California Business & Professions Code §§ 17500, *et seq.*)**

82.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

83.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendants.

84.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

85.     Defendants committed acts of false advertising, as defined by §17500, by misrepresenting that the CamelBak eddy is "spill-proof."

86.     Defendants knew or should have known, through the exercise of reasonable care that their representations about the CamelBak eddy were untrue and misleading.

87.     Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

88.    Plaintiff and the California Subclass lost money or property as a result of Defendants' FAL violations because:  (a) they would not have purchased the CamelBak eddy on the same terms if the true facts were known about the product; (b) they paid a price premium for CamelBak eddy due to Defendants' promises that it was "spill-proof;" and (c) the CamelBak eddy did not have the characteristics as promised by Defendants.

## COUNT VIII
### (Negligent Misrepresentation)

89.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

90.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

91.    As discussed above, Defendants misrepresented that the CamelBak eddy is "spill-proof."

92.    At the time Defendants made these representations, Defendants knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

93.    At an absolute minimum, Defendants negligently misrepresented and/or negligently omitted material facts about the CamelBak eddy.

94.    The negligent misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the CamelBak eddy.

95.    Plaintiff and Class members would not have purchased the CamelBak eddy if the true facts had been known.

96.    The negligent actions of Defendants caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IX
### (Fraud)

97.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

98.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and Subclass against Defendants.

99.     As discussed above, Defendants provided Plaintiff and Class members with false or misleading material information and failed to disclose material facts about the CamelBak eddy being "spill-proof."  These misrepresentations and omissions were made with knowledge of their falsehood.

100.    The misrepresentations and omissions made by Defendants, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the CamelBak eddy.

101.    The fraudulent actions of Defendants caused damage to Plaintiff, Class members, and Subclass members who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.      For an order certifying the nationwide Class and the Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as the representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass Members;

b.      For an order declaring the Defendants' conduct violates the statutes referenced herein;

c.      For an order finding in favor of Plaintiff, the Class, and the Subclass on all counts asserted herein;

d.      For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.      For prejudgment interest on all amounts awarded;

f.      For an order of restitution and all other forms of equitable monetary relief;

g.      For injunctive relief as pleaded or as the Court may deem proper;

h.   For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit;

i.   Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

j.   For such other and further relief as the Court may deem proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated:  October 21, 2019                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:   ___/s/ *Neal J. Deckant*___
          Neal J. Deckant

L. Timothy Fisher (State Bar No. 191626)
Neal J. Deckant (State Bar No. 322946)
1990 North California Boulevard, Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail: ltfisher@bursor.com
              ndeckant@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
2665 S. Bayshore Dr., Suite 220
Miami, FL 31333
Telephone: (305) 330-5512
Facsimile:  (305) 676-9006
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

**EXHIBIT A**

# BURSOR & FISHER

P.A.

1990 N. California Blvd.
Suite 940
Walnut Creek, CA 94596
www.bursor.com

Neal J. Deckant
Tel: 925-300-4455
Fax: 925-407-2700
ndeckant@bursor.com

April 18, 2019

*__Via Certified Mail – Return Receipt Requested__*

CamelBak Products, LLC
2000 S. McDowell Blvd.
Suite 200
Petaluma, CA 94954

CamelBak International, LLC
2000 S. McDowell Blvd.
Suite 200
Petaluma, CA 94954

Re: *Notice and Demand Letter Pursuant to U.C.C. §§ 2-313, 2-314, 2-607;
the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; and
California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, et seq.*

To Whom It May Concern:

  This letter serves as a preliminary notice and demand for corrective action by CamelBak Products, LLC and CamelBak International, LLC (collectively, "CamelBak") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties related to our client, Rachel Lepkowski, and a class of all similarly situated purchasers of CamelBak eddy Water Bottles, including the CamelBak eddy Water Bottle 32 oz, CamelBak eddy Water Bottle 25 oz, CamelBak eddy Water Bottle 20 oz, Camelbak eddy Kids Water Bottle 12 oz, CamelBak Kids Vacuum Insulated Stainless Water Bottle 12 oz, CamelBak eddy Kids Insulated Water Bottle 12 oz, CamelBak eddy Insulated Water Bottle 20 oz, CamelBak eddy Vacuum Insulated Stainless Water Bottle 20 oz, and CamelBak eddy Glass Water Bottle 24 oz (the "Class").  This letter also serves as a notice of violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, California's Consumers Legal Remedies Act, Cal. Civil Code § 1750, *et seq.*, including subsections § 1770(a)(5), (7), and (9), and all other applicable federal and state laws.

  Our client purchased a CamelBak eddy Water Bottle 25 oz, which CamelBak repeatedly misrepresented and warranted was "spill-proof."  Our client understood this to mean that water would not run, flow, or fall out of her CamelBak eddy water bottle (*i.e.*, leak).  However, due to a defect, CamelBak eddy Water Bottles leak, and have actually leaked for our client during prior use.  Accordingly, CamelBak violated the California CLRA and breached express and implied warranties made to our client and the Class.  *See* U.C.C. §§ 2-313, 2-314; California Civil Code §§ 1750, *et seq.*

On behalf of our client and the Class, we hereby demand that CamelBak immediately (1) issue a mandatory recall of CamelBak eddy Water Bottles and (2) make full restitution to all purchasers of the CamelBak eddy of all purchase money obtained from sales thereof.

We also demand that CamelBak preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.    All documents concerning the design, packaging, labeling, manufacturing, and redesign process for the CamelBak eddy Water Bottles;

2.    All tests of the CamelBak eddy Water Bottles, whether performed by CamelBak or any other third-party entities;

3.    All documents concerning the pricing, advertising, marketing, and/or sale of the CamelBak eddy Water Bottles;

4.    All communications with customers involving complaints or comments concerning the CamelBak eddy Water Bottles;

5.    All documents concerning communications with any retailer involved in the marketing or sale of the CamelBak Water Bottles; and

6.    All documents concerning the total revenue derived from sales of the CamelBak eddy Water Bottles.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Very truly yours,

Neal J. Deckant